## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| SPARTAN SECURITIES GROUP, LTD.;<br>CARL DILLEY; SCOTT REYNOLDS;<br>VICTOR SILVA; A. RICHARD McCANN,<br>ISLAND CAPITAL MANAGEMENT, LLC; and<br>THE BLACK DIAMOND FUND, LLLP,<br><br>Plaintiffs,<br><br>vs.<br><br>CACTRUS DRINK SYSTEMS, INC.; and<br>CAM COTE,<br><br>Defendants. | CIVIL ACTION FILE NO.<br>_____<br><br>(Jury Trial Demanded) |

## COMPLAINT

Plaintiffs Spartan Securities Group, Ltd., Carl Dilley, Scott Reynolds, Victor Silva, A. Richard McCann, Island Capital Management, LLC, and The Black Diamond Fund, LLLP n/k/a Adamas, Inc. (collectively "Plaintiffs" or "Investor-Plaintiffs"), by and through the undersigned counsel, file the following complaint for damages against Defendants Cactrus Drink Systems, Inc. and Cam Cote and allege as follows:

## PARTIES

1.　Plaintiff Spartan Securities Group, Ltd. ("Spartan") is a Florida limited partnership with its principal place of business at 100 Second Avenue South, Suite 300N, St. Petersburg, Florida 33701.

2.　Plaintiff Carl Dilley is an individual resident of the State of Florida, residing at 643 Addison Drive, NE, St. Petersburg, Florida, 33716.

3.      Plaintiff Scott Reynolds is an individual resident of the State of Florida, residing at 544 Pinellas Bay Way S#202, Tierra Verde, Florida 33715.

4.      Plaintiff Victor Silva is an individual resident of the State of Georgia, residing at 5755 Haterleigh Drive, Alpharetta, Georgia 30005.

5.      Plaintiff A. Richard McCann is an individual resident of the State of North Carolina, residing at 116 Holcombe Cove Rd., Candler, North Carolina 28715.

6.      Plaintiff The Black Diamond Fund, LLLP n/k/a Adamas Fund, LLLP is a limited partnership organized under the laws of the State of Minnesota.

7.      Plaintiff Island Capital Management, LLC ("Island") is a limited liability company organized under the laws of the State of Florida, with its principal place of business at 100 Second Avenue S., Suite 300N, St. Petersburg, Florida 33701.

8.      Defendant Cactrus Drink Systems, Inc. ("Cactrus") is a corporation organized under the laws of the State of Nevada, with its principal place of business located in Alberta, Canada at #2, 104 Railway Street, Cochrane, AB Canada T4C2B5. Cactrus may be served with process through its registered agent, Registered Agent Solutions, Inc., located at 4635 West Nevso Drive, Suite 2, Las Vegas, Nevada 89103.

9.      Defendant Cam Cote ("Cote") is an individual residing in Alberta, Canada, who may be served with process at #2, 104 Railway Street, Cochrane, Alberta, Canada T4C2B5.  At all times relevant hereto, Cote was the President, Chief Executive Officer, and Sole-Director of Cactrus.

## JURISDICTION & VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as certain of Plaintiffs' claims arise under the federal securities law of the United States.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and § 1367, as there is complete diversity of citizenship between the parties, and the amount in controversy between Plaintiffs and Defendants exceeds $75,000, exclusive of interest and costs.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendants have conducted business in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims, including the dissemination of false and misleading information, occurred in this Judicial District.

13.     In connection with the acts, conduct, and other wrongs alleged herein, Defendants Cactrus and Cote, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities markets.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

14.     Spartan is a privately-held full service investment banking firm which offers a variety of financial and other advisory services including capital formation, corporate finance, institutional sales and trading, and wealth management.

15.     Spartan acts as a broker-dealer and is registered as such with FINRA (...) and the United States Securities Exchange Commission ("SEC").

16.     Defendant Cactrus is a company that produces a product called the Cactrus Water Plus beverage dispenser.  The Cactrus Water Plus beverage dispenser is a water cooler system that simultaneously dispenses ice-cold juices and/or water.  Cactrus is the entity responsible for the development, marketing, sale and promotion of the Cactrus Water Plus beverage dispenser, which is sold in Wal-Mart stores across the United States.

17.     Cactrus has also developed a product called 4 Gallon one-way bottled water, which it began producing in the State of Florida in approximately February 2007.

### The Fraudulent Scheme

18.     In August 2006, prior to the production of one-way bottled water, Cactrus and Spartan entered into a financial advisory and investment banking agreement, whereby Spartan agreed to provide Cactrus with financial advice and/or assistance in exchange for compensation.

19.     Under the terms of the financial advisory and investment banking agreement, Cactrus granted Spartan, among other things, the right of first refusal to act as the Placement Agent for any private offering of Cactrus' securities.

20.     Between August 2006 and April 2007, Cactrus decided to make a securities offering in an effort to raise additional working capital for its business operations.

21.     On or about April 30, 2007, Cactrus and Spartan entered into a Letter of Intent, pursuant to which Spartan agreed to act as the Placement Agent for the offering of convertible debenture common stock for Cactrus.  The Letter of Intent also stated certain

securities through Spartan in accordance with the parties' Letter of Intent.  The PPM is
attached hereto as Exhibit A.

23.     The PPM stated that the proceeds of the offering would be used for legal
and accounting fees, interest payments, general corporate purposes, and working capital.

24.     Under the terms of the PPM, Cactrus made the following offering (the
"Offering"):

> We are offering to qualified accredited investors up to 1,500 Units (each a
> "Unit" and collectively the "Units"), with each Unit consisting of One (1)
> $1,000 Principal Amount 10% convertible Debenture due four years from
> its issuance date (each a "Debenture" and collectively the "Debentures")
> and One (1) warrant to purchase 1,200 shares of common stock (each a
> "Warrant" and collectively the "Warrants").  The subscription price per
> Unit is $1,000 and the minimum purchase is Ten (10) Units ($10,000).

(PPM, p. 5).

25.     According to the PPM, the Units were being offered on a "best efforts"
basis until a maximum of 1,500 Units were sold.  The PPM also stated that the securities
being offered were exempt from registration under the Securities Act of 1933 and
applicable state laws.

26.     The PPM further indicated that the offering was only being made to
investors who qualified as "Accredited Investors" and who met certain suitability
standards as stated under the terms of the PPM.

27.     As the Placement Agent for the Cactrus offering, Spartan was responsible
for identifying potential qualified investors to participate in the offering.

28.     Between July 2007 and February 2008, Investor-Plaintiffs all elected to
invest in the Offering.

29.     Spartan provided each of the Investor-Plaintiffs with a copy of the PPM, as Cactrus intended.

30.     Between August 2007 and February 2008, the Investor-Plaintiffs agreed to the terms of the offering, with each respective Investor-Plaintiff entering into a Subscription Agreement for the purchase of a certain number of Units, in accordance with the PPM. The Subscription Agreements are attached hereto as Exhibit B.

31.     By presenting the PPM and Subscription Agreements to investors and by accepting investor funds, Cactrus explicitly and implicitly agreed to the terms of the PPM and Subscription Agreements.

32.     The Subscription Agreements that were signed by the Investor-Plaintiffs expressly stated:

> SUBSCRIPTION: The undersigned ("the Subscriber") hereby irrevocable offers to purchase [a certain number of] units ("the Units") of Cactrus Drink Systems, Inc., a Nevada corporation (the "Company"), for $1,000 per Unit, of a total purchase price...when and if accepted by the Company, will constitute the payment by the Subscriber of the purchase price for the Units. Each Unit consists of one (1) $1,000 Principal Amount 10% Convertible Debenture due four years from its issuance date and one (1) warrant to purchase 1,200 shares of common stock.

(See Exhibit B, p. 1).

33.     Pursuant to the terms of the Subscription Agreements, each Investor-Plaintiff wrote a check for the amount of his or its investment, which was equal to the number of Units each investor desired to purchase, at a cost of $1,000.00 per Unit. The checks were made payable to and deposited into an account with the Libertad Bank, 512 East Riverside Drive, Ste. 100, Austin, Texas, 78704 for the benefit of Cactrus Drink Systems, Inc. (the "Escrow Account").

34.     Once Cactrus received a properly executed Subscription Agreement and a check for the securities purchased from a prospective investor, Cactrus had thirty (30) days which to determine whether to accept or reject the prospective investment.

35.     Cactrus had the option to reject a prospective investor; however, if Cactrus chose to reject a prospective investor, it had to return all of the funds received from that investor promptly.

36.     If Cactrus accepted the investment, then, according to both the Subscription Procedures and the PPM, Cactrus was required to deliver to the investor the Convertible Debentures and Warrants within thirty (30) days of such acceptance.

37.     Collectively, the Investor-Plaintiffs invested $520,000 in the Offering, with each Investor-Plaintiff signing a Subscription Agreement and writing a check for his or its respective investment.

38.     Cactrus did not reject any of the Investor-Plaintiffs' investments.

39.     To the contrary, on several occasions between August 2007 and February 2008, Cactrus directed Libertad Bank to wire the Investor-Plaintiffs' funds to Cactrus in order to make use of the Investor-Plaintiffs' funds.

40.     Although Cactrus directed certain of Investor-Plaintiffs' funds to be released, Cactrus never delivered to any of the investors the Convertible Debentures and Warrants within the timeframe set forth under the PPM and the Subscription Agreements.

41.     Defendants repeatedly made oral representations and provided assurances to Investor-Plaintiffs that the Convertible Debentures and Warrants would soon be issued.

42.     The last disbursement of funds from the Escrow Account was made February 5, 2008.   Accordingly, the latest date that the Convertible Debentures and Warrants were due to the Plaintiff-Investors was March 5, 2008.

43.     To date, Cactrus has refused to issue the required Convertible Debentures and Warrants or otherwise honor the terms of the PPM and the Subscription Agreements.

44.     Additionally, upon information and belief, Cactrus has not used the proceeds from the Offering for any business-related purpose as required by the terms of the PPM.  Instead, Cote has wrongfully used the proceeds from the Offering for his own personal benefit, including, without limitation, to purchase luxury vacations and an automobile.

45.     Since April 2008, the Investor-Plaintiffs have made repeated demands to Defendants either to deliver the Convertible Debentures and Warrants that are rightfully owed to them or to refund their investments in full.

46.     To date, Defendants have refused to deliver the Convertible Debentures and Warrants or refund to the Investor-Plaintiffs' demands.

47.     As such, the Investor-Plaintiffs have sustained and continue to sustain significant losses.

48.     In committing or causing the acts alleged herein, Defendants employed a scheme to defraud; made untrue statements of material facts; engaged in acts, practices and courses of business which operated as a fraud or deceit, all in connection with the purchase and sale of securities.  Defendants have breached their contracts and fiduciary

duties, misappropriated funds, violated Florida Securities Statutes, and have been unjustly enriched as a result.

## COUNT I – VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1933

49.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 48 as though fully set forth herein.

50.     Defendants Cactrus and Cote, directly and indirectly, by use of the means or instruments of transportation or communications in interstate commerce and by use of the U.S. mail, electronic mail, and the internet, in the offer or sale of securities as described in this Complaint, knowingly, willfully and/or recklessly employed devices, schemes, or artifices to defraud.

51.     Defendants Cactrus and Cote offered and sold the Units of Cactrus in violation of Section 12 of the Securities Exchange Act, 15 U.S.C. 77(l), and are liable to each of the Investor-Plaintiffs for the consideration paid, prejudgment interest, and reasonable costs associated with the action and all further just and proper relief.

## COUNT II – VIOLATION OF SECURITIES EXCHANGE ACT OF 1934

52.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 51 as though fully set forth herein.

53.     Defendants Cactrus and Cote, directly and indirectly, by use of the means or instruments of transportation or communications in interstate commerce and by use of the U.S. mail, electronic mail, and the internet, in the offer or sale of securities as described in this Complaint, knowingly, willfully and/or recklessly employed devices, schemes, or artifices to defraud.

54.     By reason of the foregoing, Defendants have violated Section 17(a)(1) of the Securities Exchange Act, 15 U.S.C. 77q(a)(1) and are liable to each of the Investor-Plaintiffs for the consideration paid, prejudgment interest, and reasonable costs associated with the action and all further just and proper relief.

**COUNT III – VIOLATION OF SECURITIES EXCHANGE ACT OF 1934**

55.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 54 as though fully set forth herein.

56.     Defendants Cactrus and Cote, directly and indirectly, by use of the means or instruments of transportation or communications in interstate commerce and by use of the U.S. mail, electronic mail, and the internet, in the offer or sale of securities as described in this Complaint:   (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (b) engaged in transactions, practices, and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

57.     By reason of the foregoing, Defendants have violated Section 17(a)(2) and (3) of the Securities Exchange Act, 15 U.S.C. 77q(a)(2) and (3), and are liable to each of the Investor-Plaintiffs for the consideration paid, prejudgment interest, and reasonable costs associated with the action and all further just and proper relief.

## COUNT IV – VIOLATION OF SECTION 10(B) AND RULE 10(B)-5

58.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 57 as though fully set forth herein.

59.     Defendants Cactrus and Cote, directly and indirectly, by use of the means or instruments of transportation or communications in interstate commerce and by use of the U.S. mail, electronic mail, and the internet, in the offer or sale of securities, as described in this Complaint, knowingly, willfully, and/or recklessly:   (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in transactions, practices, and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

60.     By reason of the foregoing, Defendants have violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder, and are liable to each of the Investor-Plaintiffs for damages resulting therefrom.

## COUNT V – VIOLATION OF SECURITIES EXCHANGE ACT OF 1934

61.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 60 as though fully set forth herein.

62.     Defendants made various false representations, wrongful omissions and concealed material facts relating to the Offering, including, without limitation, that Cactrus would issue Convertible Debentures and Warrants in exchange for the Plaintiffs'

investments in Cactrus and that the proceeds from the offering would be used to enhance Cactrus' business operations.

63.     Defendants made such false representations and wrongful omissions with the knowledge and intent that such representations were false, material, and wrongful at the time that they were made.

64.     Defendants concealed and suppressed the falsity, materiality, and wrongfulness from the Investor-Plaintiffs, with the intent to defraud, deceive, and injure the Investor-Plaintiffs.

65.     Upon information and belief, Defendant Cote acted as a controlling person within the meaning of Section 20(a) of the Securities Exchange Act.

66.     By reason of his respective positions as an owner, officer and/or director of Cactrus, Cote, either directly or indirectly, had power and authority to control and did control, in bad faith, the making of each of the false representations, wrongful omissions, and concealments.

67.     As a direct and proximate result of Cote's conduct, the Investor-Plaintiffs have been damaged in an amount not less than $520,000, to be more specifically proven at trial.

68.     By reason of the foregoing, Defendant Cote has violated Section 20(a) of the Securities Exchange Act, and is liable to each of the Investor-Plaintiffs for damages resulting therefrom.

## COUNT VI – BREACH OF CONTRACT

69.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 68 as though fully set forth herein.

70.     Defendant Cactrus contracted with Investor-Plaintiffs to provide Convertible Debentures and Warrants in exchange for the Plaintiffs' investments in the Offering, pursuant to the terms of the PPM and Subscription Agreements.

71.     The Investor-Plaintiffs have performed all of the conditions, covenants, obligations, and promises required under the terms of the PPM and their respective Subscription Agreements.

72.     Cactrus has inexcusably failed to perform and has breached its contractual duties to Investor-Plaintiffs by, among other things, failing to fulfill its obligations under the PPM and Subscription Agreements, failing to deliver the Convertible Debentures and Warrants pursuant to the terms of the PPM and Subscription Agreements; failing to return Plaintiffs' investments, when Plaintiffs' requested their return; and breaching the duty of good faith and fair dealing implied in the PPM and the Subscription Agreements.

73.     As a direct and proximate result of Cactrus's actions in breaching the PPM and the Subscription Agreements, the Investor-Plaintiffs have been damaged in an amount not less than $520,000, to be more specifically proven at trial.

## COUNT VII – FRAUD

74.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 73 as though fully set forth herein.

75.     By means of a defective and misleading PPM, Defendants Cactrus and Cote offered and sold shares of Cactrus to the Investor-Plaintiffs.

76.     The PPM contained various untrue statements of material fact, wrongful omissions, and concealed and failed to disclose other material facts relating to the Offering, including, without limitation, that Cactrus would issue Convertible Debentures and Warrants in exchange for the Plaintiffs' investments in Cactrus and that the proceeds from the Offering would be used exclusively to enhance Cactrus' business operations.

77.     Defendants made such false representations and wrongful omissions with the knowledge and intent that such representations were false, material, and wrongful at the time that they were made.

78.     Defendants concealed and suppressed the falsity, materiality, and wrongfulness from the Investor-Plaintiffs, with the intent to defraud, deceive, and injure the Investor-Plaintiffs.

79.     At the time that Defendants made such false representations, wrongful omissions and concealments, the Investor-Plaintiffs were unaware of their falsity, materiality, and wrongfulness.

80.     The Investor-Plaintiffs believed the representations of the Defendants to be true and justifiably relied on these representations and omissions in accepting the Offering and signing the Subscription Agreements and in depositing, wiring, and/or entrusting their monies to Cactrus.

81.     Had the Investor-Plaintiffs known that the representations made in the PPM were false, that the Defendants did not intend to issue them Convertible Debentures and Warrants in exchange for their investments in Cactrus, or that the proceeds from the

Offering would not be used strictly to enhance Cactrus' business operations, they would not have invested in the Offering.

82.     As a direct and proximate result of the Defendants' actions, the Investor-Plaintiffs have been damaged in an amount not less than $520,000, to be more specifically proven at trial.

83.     Furthermore, Defendants acted in bad faith, in a willful, knowing, malicious, oppressive and fraudulent manner, with the intent and purpose of advancing their own gain at the expense and to the detriment of the Investor-Plaintiffs, and, as such, Plaintiffs are entitled to punitive and exemplary damages from the Defendants.

## COUNT VIII – MISREPRESENTATION

84.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 83 as though fully set forth herein.

85.     During the course of the Offering, Defendants Cactrus and Cote made numerous misrepresentations and omissions of material fact to Plaintiffs, contrary to their legal and equitable duties, including those duties imposed by trust or confidence.

86.     Specifically, Defendants Cactrus and Cote issued a defective and misleading PPM, and offered and sold shares of Cactrus to the Investor-Plaintiffs.

87.     The PPM contained various untrue statements of material fact, wrongful omissions, and concealed and failed to disclose other material facts relating to the Cactrus offering, including, without limitation, that Cactrus would issue Convertible Debentures and Warrants in exchange for the Plaintiffs' investments in Cactrus and that the proceeds from the offering would be used to enhance Cactrus' business operations.

88.     Defendants knew, or with reasonable care, should have known that these misrepresentations and omissions of material fact were materially misleading and inaccurate and did not provide the Investor-Plaintiffs with a full and accurate disclosure of material information regarding the Offering.

89.     Defendants made such misrepresentations and misleading statements for the purpose of inducing Plaintiff-Investors to accept the Offering and deposit, wire, and/or entrust their monies to Cactrus, which would later be withdrawn unlawfully, illegally, and in violation of the agreements made to Plaintiffs.

90.     Defendants concealed and suppressed the falsity, materiality, and wrongfulness from the Investor-Plaintiffs, with the intent to defraud, deceive, and injure the Investor-Plaintiffs.

91.     At the time that Defendants made such false representations and misleading statements, the Investor-Plaintiffs were unaware and had no way of discovering their falsity, materiality, and/or wrongfulness.

92.     The Investor-Plaintiffs believed the representations of the Defendants to be true and justifiably relied on these representations in accepting the Offering and signing the Subscription Agreements and in depositing, wiring, and/or entrusting their monies to Cactrus.

93.     Had the Investor-Plaintiffs known that the representations made in the PPM were false, that the Defendants did not intend to issue them Convertible Debentures and Warrants in exchange for their investments in Cactrus, or that the proceeds from the

offering would not be used to enhance Cactrus' business operations, they would not have invested in the Offering.

94.     As a direct and proximate result of the Defendants' actions, the Investor-Plaintiffs have been damaged in an amount not less than $520,000, to be more specifically proven at trial.

## COUNT IX – UNJUST ENRICHMENT

95.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 94 as though fully set forth herein.

96.     As set forth in detail herein, Defendants Cactrus and Cote have wrongfully and without justification withheld Convertible Debentures and Warrants and/or investment funds belonging to Plaintiffs, and have been unjustly enriched as a result thereof.

97.     It is unconscionable, inequitable, and unjust for Cactrus and Cote to retain these benefits, which have been obtained at Plaintiffs' expense and to Plaintiffs' detriment and which have been unlawfully used by Defendants for purposes which were unintended, not agreed to and without Plaintiffs' knowledge and/or permission.

98.     As a direct and proximate result of the Defendants' actions, the Investor-Plaintiffs have been damaged in an amount not less than $520,000, to be more specifically proven at trial.

## COUNT X – MISAPPROPRIATION

99.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 98 as though fully set forth herein.

100.    Defendants Cactrus and Cote were engaged in a scheme or enterprise through which the Investor-Plaintiffs were induced to invest in the Cactrus offering and to wire, transfer, and/or deposit monies for the benefit of Cactrus in exchange for Convertible Debentures and Warrants.

101.    Defendants held themselves out and represented to the Investor-Plaintiffs that they were accepting the investments for the purposes described in the PPM and according to the terms of the PPM and Subscription Agreements.

102.    In direct contravention to the representations, promises, guarantees, duties and/or obligations owed to the Investor-Plaintiffs, Defendants facilitated, allowed, and/or failed to take the necessary and prudent steps to ensure that the terms of the PPM and Subscription Agreements were met, that the required Convertible Debentures and Warrants were issued, or that the Plaintiffs' monies were returned.

103.    In direct contravention to the representations, promises, guarantees, duties and/or obligations owed to Plaintiffs, Defendants misappropriated and/or allowed the misappropriation of the Investor-Plaintiffs' monies and/or allowed the Investor-Plaintiffs' monies to be used for purposes which were inappropriate, unintended, not agreed to, and/or without the Investor-Plaintiffs' knowledge or permission.

104.    As a direct and proximate result of the Defendants' actions, the Investor-Plaintiffs have been damaged in an amount not less than $520,000, to be more specifically proven at trial.

## COUNT XI – BREACH OF FIDUCIARY DUTY

105.    Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 104 as though fully set forth herein.

106.    During the course of the Cactrus offering, Defendants Cactrus and Cote made numerous misrepresentations and omissions of material fact to the Investor-Plaintiffs, contrary to their legal and equitable duties, including those duties imposed by trust or confidence.

107.    Specifically, Defendants Cactrus and Cote issued a defective and misleading PPM, and offered and sold shares of Cactrus to the Investor-Plaintiffs.

108.    The PPM contained various untrue statements of material fact, wrongful omissions, and concealed and failed to disclose other material facts relating to the Cactrus offering, including, without limitation, that Cactrus would issue Convertible Debentures and Warrants in exchange for the Plaintiffs' investments in Cactrus and that the proceeds from the Offering would be used to enhance Cactrus' business operations.

109.    Defendants made such misrepresentations and misleading statements in furtherance of their scheme and for the purpose of inducing Plaintiff-Investors to accept the Offering and deposit, wire, and/or entrust their monies to Cactrus, which would later be withdrawn unlawfully, illegally, and in violation of the agreements made with Plaintiffs.

110.    The Investor-Plaintiffs believed the representations of the Defendants to be true and justifiably relied on these representations and omissions in accepting the

Offering and signing the Subscription Agreements and in depositing, wiring, and/or entrusting their monies to Cactrus.

111.    Under the terms of the PPM and Subscription Agreements, Defendants had an enhanced level of duty and obligations to Plaintiff-Investors, which required Defendants take additional and independent actions to ensure that the terms of the PPM and Subscription Agreements would be honored and or that Plaintiffs' monies would be returned.

112.    Defendants Cactrus and Cote breached this trust and/or fiduciary duty by, among other things, misleading Plaintiffs about the Offering; failing to provide complete, accurate, and truthful information about the Offering; failing to ensure the obligations under the PPM and Subscription Agreements were fulfilled; failing ensure the Convertible Debentures and Warrants were provided to Plaintiffs pursuant to the terms of the PPM and Subscription Agreements; and failing to safeguard and return Plaintiffs' investments, when Plaintiffs requested their return.

113.    Had the Investor-Plaintiffs had true, accurate, and complete information about the Offering and known that the representations made in the PPM were false, that the Defendants did not intend to issue them Convertible Debentures and Warrants in exchange for their investments in Cactrus, or that the proceeds from the Offering would not be used to enhance Cactrus' business operations, they would not have invested in the Cactrus offering.

114.    Defendants, who had superior knowledge of the Offering, acted in bad faith in breaching their trust and fiduciary duty and in failing to disclose relevant and material information to Plaintiffs.

115.    As a direct and proximate result of the Defendants' actions, the Investor-Plaintiffs have been damaged in an amount not less than $520,000, to be more specifically proven at trial.

116.    Furthermore, Defendants acted in bad faith, in a willful, knowing, malicious, oppressive and fraudulent manner, with the intent and purpose of advancing their own gain at the expense and to the detriment of the Investor-Plaintiffs, and, as such, Plaintiffs are entitled to punitive and exemplary damages from the Defendants.

## COUNT XII – VIOLATIONS OF FLORIDA SECURITY AND INVESTOR PROTECTION ACT

117.    Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 116 as though fully set forth herein.

118.    The Florida Security and Investor Protection Act (Chapter 517 of the Florida Statutes) provides causes of action and remedies for, among other things, misrepresentations and omissions in connection with the offer, sale, or purchase of an "investment" or security.

119.    Defendants offered and sold securities and investments as defined by the Florida Security and Investor Protection Act.

120.    Under Florida Statute §517.301(2), an "investment" is defined as a commitment of money or property principally induced by a representation that an economic benefit may be derived from such commitment.

121.    The Offering constituted an "investment," as the Offering involved a commitment of money that was induced by written and oral representations that an economic benefit would be derived from such commitment, and by the written representations and documents provided to the Investor-Plaintiffs that the "investment" would be handled according to the terms and conditions of the PPM and Subscription Agreements.

122.    Defendants made numerous misrepresentations and omissions of material fact to the Investor-Plaintiffs during the course of the Offering.

123.    Specifically, the PPM contained various untrue statements of material fact, wrongful omissions, and concealed and failed to disclose other material facts relating to the Offering, including, without limitation, that Cactrus would issue Convertible Debentures and Warrants in exchange for the Plaintiffs' investments in Cactrus and that the proceeds from the Offering would be used to enhance Cactrus' business operations.

124.    Defendants made such misrepresentations and misleading statements in furtherance of their scheme and for the purpose of inducing Plaintiff-Investors to accept the Offering and deposit, wire, and/or entrust their monies to Cactrus, which would later be withdrawn unlawfully, illegally, and in violation of the agreements made with Plaintiffs.

125.    The Investor-Plaintiffs believed the representations of the Defendants to be true and justifiably relied on these representations and omissions in accepting the Offering and signing the Subscription Agreements and in depositing, wiring, and/or entrusting their monies to Cactrus.

126.   Defendants have failed to honor the terms of the PPM or Subscription Agreements and have failed to return Plaintiffs' investments.

127.   As a direct and proximate result of the actions and conduct of Defendants, the Investor-Plaintiffs have suffered and will continue to suffer damages, including, but not limited to the loss of their entire "investment."

128.   The Florida Statutes provide certain statutory remedies and damages, including rescission, and/or reimbursement of actual losses, interest, reasonable attorneys' fees, and other damages, to which Plaintiffs are entitled.

## COUNT XIII SPECIFIC PERFORMANCE

129.   Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 128 as though fully set forth herein.

130.   At all times relevant hereto, a valid written contract existed between Investor-Plaintiffs and Cactrus, giving Investor-Plaintiffs the right to Convertible Debentures and Warrants in exchange for their investment in the Offering in accordance with the terms of the PPM and the Subscription Agreements.

131.   Once Investor-Plaintiffs signed the Subscription Agreements and tendered their investment funds, Defendants were obligated to issue the Convertible Debentures and Warrants.

132.   The Investor-Plaintiffs fully performed their part of the Subscription Agreements.

133.   In violation of their promises and obligations under the PPM and the Subscription Agreements, Defendants wrongfully refused and continue to refuse to issue

the Convertible Debentures and Warrants to the Investor-Plaintiffs and have repudiated the PPM and the Subscription Agreements as more fully alleged herein.

134.    The Convertible Debentures and Warrants at issue reflect an ownership interest in Cactrus, since the holders of these debentures and warrants have the option to convert the outstanding debentures into 51% of outstanding shares of Cactrus stock, under the terms of the Convertible Debentures and Warrants.  (An exemplar Convertible Debenture and Warrant is attached hereto as Exhibit C.)

135.    The Investor-Plaintiffs have no plain, speedy, or adequate remedy in the ordinary course of law, and damages, if awarded, cannot be properly ascertained and would be inadequate to compensate plaintiffs for the detriment of Defendants' breach.

136.    The Investor-Plaintiffs have been irreparably harmed by, *inter alia,* the Defendants' outright refusal to issue the Convertible Debentures and Warrants and/or otherwise cure its breaches of the PPM and Subscription Agreements—an injury for which no adequate remedy at law exists.

137.    Accordingly, the Investor-Plaintiffs request an order from this Court requiring Defendants to issue the Convertible Debentures and Warrants to the Investor-Plaintiffs as required by the PPM and the Subscription Agreements.

## COUNT XIV– ACCOUNTING/CONSTRUCTIVE TRUST

138.    Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 137 as though fully set forth herein.

139.    Defendants owe various contractual and fiduciary obligations to the Investor-Plaintiffs as set forth herein.

140.   Defendants presently hold proceeds, funds and/or properties derived from Plaintiffs' investments in the Offering, as well as documentation pertaining to same, all of which rightfully belongs to the Investor-Plaintiffs.

141.   Upon information and belief, Defendants have received, and continue to receive, benefits and profits rightfully belonging to the Investor-Plaintiffs which have been, and are, derived from Defendants' wrongful conduct, but Plaintiffs are presently unable to fully ascertain the extent of same.

142.   By reason of the foregoing, Plaintiffs are entitled to, *inter alia*: (a) an accounting of all Cactrus funds, properties and other assets which have been within Defendants' possession or control at any time since August 2007, including without limitation, all benefits and profits derived there from; (b) the imposition of a constructive trust and/or equitable lien thereon in favor of the Investor-Plaintiffs, with an order for conveyance to each Investor-Plaintiffs for his or its rightful share thereof, and (c) all documentation and records in the possession or control of Defendants, or anyone acting in concert with them, which pertain to such funds, properties and other assets, and all benefits and profits derived there from, and an order for conveyance thereof to the Investor-Plaintiffs.

143.   By reason of the wrongful manner by which Defendants obtained, and continue to obtain, possession of funds, properties and assets which rightfully belong to the Investor-Plaintiffs, Defendants are involuntary trustees holding such funds, properties and assets, and any benefits and profits derived there from, in constructive trust for the

use and benefit of the Investor-Plaintiffs, and with the duty to re-convey the same to them.

144.    The Investor-Plaintiffs have no adequate remedy at law, and the imposition of a constructive trust or, alternatively, an equitable lien, is required to avoid the perpetration of Defendants' wrongful misconduct, to prevent the unjust enrichment of them, and to avoid irreparable injury to the Investor-Plaintiffs.

145.    Alternatively, the Court should impress such funds, properties and assets, which rightfully belong to the Investor-Plaintiffs, as well as any benefits and profits derived there from, with an equitable lien in favor of the Investor-Plaintiffs.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues of fact in this matter.

WHEREFORE, Plaintiffs pray that this Court enter judgment against Defendants for:

(1)    For the amounts paid for the subject securities, together with interest accruing thereon at the legal rate;

(2)    For actual damages in a sum to be determined according to proof, but in no event less than the sum of $520,000.00, together with interest accruing thereon at the legal rate;

(3)    For punitive and exemplary damages in a sum to be determined by the trier of fact herein;

(4)    For specific performance as requested herein;

(5)     For an accounting, imposition of constructive trust and/or equitable lien;

(6)     For such other incidental and consequential damages as may be proven at

trial;

(7)     For costs, interest, and legal expenses allowed by law; and

(8)     such other and further relief as the Court shall deem just and proper.

Dated this ___19th___ November, 2008.


                                    LOCKE LORD BISSELL & LIDDELL LLP


                                    _____
                                    Elizabeth J. Campbell - Trial Counsel
                                    Florida Bar No. 0027916
                                    ecampbell@lockelord.com
                                    The Proscenium, Suite 1900
                                    1170 Peachtree Street, NE
                                    Atlanta, Georgia 30309
                                    Telephone: 404.870.4600
                                    Facsimile:  404.872.5547

                                    *Attorneys for Plaintiffs*